| | | |
|---|---|---|
| URIEL ISAIAS CAMARA, AND | § | |
| ROBERT RAYMOND MARTINEZ | § | |
| *Plaintiffs* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 5:18-cv-00143 |
| | § | |
| CLAYTON TRANSPORT, INC. | § | |
| *Defendants* | § | |

PLAINTIFFS' MOTION FOR SPOLIATION FINDING AND REMEDY FOR FAILURE TO PRESERVE RELEVANT EVIDENCE

TO THE HONORABLE U.S. DISTRICT JUDGE:

NOW COME, Plaintiffs, Uriel Isaias Camara and Roberto Raymond Martinez and complain of Defendant Clayton Transport, Inc., and file this Motion for Spoliation Finding and Remedy for Failure to Preserve Relevant Evidence, and in support would respectfully show unto the Court as follows:

I. PRELIMINARY STATEMENT

1.      This lawsuit arises out of severe personal injuries sustained by Uriel Isaias Camara and his passenger, Roberto Raymond Martinez, in a collision that occurred on January 18, 2018.  Plaintiffs were rear-ended by an 18-wheeler driven by Troy Alan Dunlop.  Mr. Dunlop was cited by the Laredo Police Department for failure to control speed.[1]  At the time of the incident, Mr. Dunlop was within the course and scope of his employment with Clayton Transport, Inc. ("CTI").

2.      Plaintiffs were transported by EMS from the scene of the collision to Doctors Hospital of Laredo. Although required by the Federal Motor Carrier Safety Regulations ("FMCSR"), CTI failed to require their driver to complete a drug or alcohol test.[2]

---

[1] Exhibit A, Police Report.
[2] Exhibit B, CTI's 2nd Amended Answers to Plaintiff's Interrogatories No. 20.

2.     Plaintiffs sued Defendant for injuries and damages sustained in the collision. Despite being placed on notice that Plaintiffs were injured and had retained legal counsel, Defendant wholly failed to preserve certain relevant evidence, even though it is required by Federal Law to be retained.[3] Such evidence included, but is not limited to, the defendant driver's qualification file, driver's logs, GPS records, and vehicle maintenance records.

3.     CTI's failure to properly retain evidence has deprived Plaintiffs of the ability to conduct a full and meaningful investigation and this Court has broad discretion to tailor a spoliation remedy to address the undue prejudice suffered by the Plaintiffs. Plaintiffs request that this Court impose a proportionate spoliation remedy against CTI, such as sanctions or the submission of a spoliation instruction to the jury.

## II. FACTS

4.     A Notice of Representation and Spoliation of Evidence Notice was sent to CTI on January 23, 2018, just five days after the collision.[4] The same notice was sent to CTI's insurance provider on the same day, January 23, 2018.[5] The letter informed Defendant and its insurance carrier that Plaintiffs were represented by legal counsel for the injuries they sustained in the collision made the basis of this suit and served as a formal notice to Defendants to anticipate litigation in this matter. The letter also demanded that CTI preserve evidence relating to this crash, the truck and company records and specifically identified the driver qualification file as one of the items necessary to be preserved. A response to Plaintiffs' letter by Hallmark Insurance was received on

---

[3] Exhibit C, CTI's 3rd Amended Responses to Plaintiff's Request for Production No. 3.
[4] Exhibit D, Notice of Representation and Spoliation of Evidence Notice to CTI. See also Exhibit E, the certified receipt signed by Lance Clayton (owner of Clayton Transport) dated January 29, 2018.
[5] Exhibit F, Notice of Representation and Spoliation of Evidence Notice to Hallmark insurance.

January 31, 2018.[6]  Additionally, CTI hired counsel before filing of this suit who attempted to coordinate an inspection of the tractor-trailer.[7]

## A. Drug/Alcohol Test

5.      The Federal Motor Carrier Safety Regulation §382.303 requires drivers to be tested for alcohol within 8 hours and controlled substances within 32 hours of a collision involving an injury. The police report demonstrates that Plaintiffs, Uriel Camara and Robert Martinez, were transported by EMS from the scene of the collision and taken to the hospital.   Although required by the Federal Motor Carrier Safety Regulations, CTI failed to require its driver to complete a drug or alcohol test.   The failure to have Troy Dunlop tested for drugs and alcohol following the incident was a failure to reasonably preserve discoverable evidence that has caused extreme and irreparable prejudice to the Plaintiffs and must be remedied.

## B. Driver Qualification File

6.      Despite knowing that their driver was involved in a collision causing injuries and despite the spoliation letter which specified CTI's obligation to preserve the driver qualification file, CTI's representative testified that the driver qualification file on Troy Dunlop was not maintained.[8]   The Federal Motor Carrier Safety Regulations § 391.51 requires that a motor carrier such as CTI shall maintain a driver qualification file for each driver it employs for as long as the driver is employed and for three years thereafter and specifies the documents which must be included.    Destroying files that are required to be maintained not only by Federal Laws as well as the laws on preserving evidence has caused extreme and irreparable prejudice to the Plaintiffs, and must be remedied.

---

[6] Exhibit G, Acknowledgement letter from Hallmark Insurance dated January 31, 2018.
[7] Exhibit H, Letter from attorney for CTI, Noe Reyna, regarding protocol for the inspection of the tractor-trailer.  An inspection was never done.
[8] Exhibit I, Deposition Transcript of Lance Clayton, Owner of CTI, p. 13:6-13 (CTI was sold and all the documents were left with the new owners); p.21:21-23 (all computer equipment was left at the sold building); p.22:12-18 (Clayton did not speak to new owners about obtaining any documents relevant to this suit); p.39:6-13 (Clayton did  not ask the new owners of company to preserve documents).

**C. Hours of Service/GPS**

7.      As an over-the-road interstate truck driver, Mr. Dunlop's driving and the record-keeping associated with that driving is governed by the Federal Motor Carrier Safety Regulations. Specifically, Parts 40, 382, 383, 390-397, and 399, Subchapter B, Chapter 3, Title 49 of the Code of Federal Regulations sets out the regulations governing interstate truckers. These federal regulations mandate certain record keeping requirements, including without limitation the following:

> 1. Section 395.8. Driver's Record of Duty Status.
>
> 2. Section 395.8(k). Retention of driver's record of duty status.
>
> 3. Section 383.31. Notification of convictions for driver violations.

8.      These regulations are mandatory in nature, and require that interstate truck drivers accurately record their duty status in a logbook, that the employer must retain the records of duty status for a period of six (6) months (typically done on a rolling basis), and that the employer must receive a notification of conviction for driver violations.

9.      In trucking litigation of this sort, the driver logbooks and record of duty status are vitally important documents. These documents are the best evidence of a particular driver's compliance with the "hours in service" requirements of the FMSCR. These "hours of service" requirements were implemented by the US Department of Transportation, Federal Motor Carrier Safety Administration, in order to ensure that commercial truck drivers were not overly fatigued while driving, and that they received the proper amount of rest and down time. In the absence of the logbooks or some other record of duty status (such as the relatively new electronic logging systems which CTI had in place at the time of the collision), there is virtually no way to establish whether

or not a particular driver, such as Mr. Dunlop, was in compliance with the hours in service requirements at a particular time.

10. Lance Clayton, owner and corporate representative of CTI, knew as of January 29, 2018, that Plaintiffs had suffered injuries and was put on notice to preserve evidence relating to this collision. Mr. Clayton testified that at the time of this collision, Dunlop was required to record his hours of service electronically through a system called *Omnitracs*, and that *Omnitracs* also tracked the tractor-trailer with a GPS tracking device.[9] Mr. Clayton testified that although he had complete access to download the electronic logs and the GPS records,[10] he did not download them and he no longer has access to the logs or GPS records thereby failing to preserve them.[11]

**D. Driver Vehicle Inspection Reports**

11. Drivers of commercial motor vehicles must inspect their vehicles and sign a vehicle inspection report at the completion of each day's work both before and after trip.[12] Motor Carriers such as CTI are required to maintain the original driver inspection reports, the certificates of repairs, and the certification of the driver's review for three months from the date of the initial report, or when litigation is anticipated. CTI wholly failed to preserve any vehicle inspection reports, thereby causing irreparable harm to Plaintiffs.[13]

II. ARGUMENT & AUTHORITIES

**A.    Standards**

12. Federal law generally governs spoliation issues, even in a diversity case. *See King v. Illinois Central R.R.*, 337 F.3d 550, 555-56 (5th Cir. 2003). Spoliation is the destruction or the

---

[9] Exhibit I, p.28:9-15.
[10] Exhibit I, p.17:9-18.
[11] Id.
[12] 49 CFR §396.11 & §396.13, respectively.
[13] Exhibit C, Response to Production No. 9.

significant and meaningful alteration of evidence, when a party has a duty to preserve it. *See Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010) ("Spoliation is the destruction or significant and meaningful alteration of evidence."); *See also Escobar v. City of Houston*, No. 04-1945, 2007 WL 2900581, *17 (S.D. Tex. Sept. 29, 2007). A duty arises when a party has notice that the evidence is relevant to litigation or should know that the evidence may be relevant to future litigation. *See Rimkus Consulting*, 688 F. Supp. 2d at 612-13 (collecting cases). Generally, sanctions for spoliation must be based on a party's bad faith or bad conduct. *See King*, 337 F.3d at 556 (stating that a party seeking sanctions must show the "bad conduct" or the "bad faith" of the destroying party); *Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*, No. 3:06-CV-0271-B, 2008 WL 3261095, *12 (N.D. Tex. Aug. 8, 2008) (identifying "bad conduct" or "bad faith" as spoliation's predicate) (citing *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005)); *GW Equity LLC v. Xcentric Ventures LLC*, No. 3:07-CV-976-O, 2009 WL 62168, *8 (N.D. Tex. Jan. 9, 2009) (same as *Super Futures*); *Rimkus Consulting*, 688 F. Supp. 2d at 614 (collecting cases from various federal jurisdictions); *Escobar,* No. 04-1945, 2007 WL 2900581, at *17 (citing *King*). A court may consider the degree of culpability of the destroying party and the prejudice to the aggrieved party. *See Rimkus Consulting*, 688 F. Supp. 2d at 613 ("Determining whether sanctions are warranted and, if so, what they should include, requires a court to consider both the spoliating party's culpability and the level of prejudice of the party seeking discovery."). Whether preservation conduct is acceptable in a given case turns on what is reasonable; that is, whether what was done or not done was proportional to the circumstances and consistent with clearly established standards. *See Rimkus Consulting*, 688 F. Supp. 2d at 613 & n.8. But courts have also fashioned remedies to relieve a party of the unfair prejudice of another's negligent destruction of evidence under the principle that parties

should bear the risk of their own negligence. *See Rimkus Consulting*, 688 F. Supp. 2d at 615 ("The court applied case law in the Second Circuit, including the language in *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 108 (2d Cir. 2002) (stating that the sanction of an adverse inference may be appropriate in some cases involving negligent destruction of evidence because each party should bear the risk of its own negligence.") (citing other cases, which imposed sanctions for the negligent destruction of evidence). Also, a court may consider whether the lost evidence would have been relevant. *See Rimkus Consulting*, 688 F. Supp. 2d at 615-16 (collecting cases).

13.     In the case of evidence destroyed before litigation, a federal court uses its inherent powers to fashion a remedy. *See Rimkus Consulting Group*, 688 F. Supp. 2d at 611 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46, 111 S. Ct. 2123, 2132 (1991)); *see also Tandycrafts, Inc. v. Bublitz*, No. 3:97-CV-1074-T, 2002 WL 324290, *5 (N.D. Tex. Feb. 27, 2002) (noting a court's inherent power to sanction bad-faith conduct in the destruction of evidence). Remedies or sanctions range from striking a party's pleadings or defenses, ruling that given facts are established, or giving an adverse-inference instruction to a jury. *See, e.g., Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*, No. 3:06-CV-0271-B, 2008 WL 3261095, *13-14 (N.D. Tex. Aug. 8, 2008) (concluding that an "adverse inference instruction" was appropriate, recommending that the court inform the jury of the party's spoliation and that the jury may consider the spoliation as part of their deliberation on the spoliating party's claims, and awarding attorney's fees); *Tandycrafts, Inc. v. Bublitz*, No. 3:97-CV-1074-T, 2002 WL 324290, *1, 3-4 (N.D. Tex. Feb. 27, 2002) (after ordering a trial on damages only, ruling that the spoliating party would only be permitted to cross-examine the opponent's witnesses, barred from producing any evidence of its own, and permitted to use for impeachment only documents produced in discovery, and awarding

attorney's fees); *Escobar v. City of Houston*, No. 04-1945, 2007 WL 2900581, *17 (S.D. Tex. Sept. 29, 2007) ("A sanction may include an instruction that if a party that destroys or loses evidence subject to a preservation obligation, the fact finder may presume that the evidence was prejudicial. *FDIC v. Hurwitz*, 384 F. Supp. 2d 1039, 1099 (S.D. Tex. 2005)." (citing *Nation-Wide Check Corp. v. Forest Hills Distribs, Inc*., 692 F.2d 214, 217-18 (1st Cir. 1982)); *Rimkus Consulting*, 688 F. Supp. 2d at 618-20 & n.20 (setting out the jury charge provided to a jury as a spoliation sanction).

## B. Duty to Preserve

14.     In the case at bar, there is sufficient evidence of CTI's bad faith in destroying or otherwise discarding the requested documents to warrant the imposition of sanctions or jury instruction. CTI was well aware of the potential litigation, as evidenced by the acknowledgement of Plaintiffs' spoliation letters and the employment of defense counsel a few months after the accident. CTI destroyed or failed to preserve: (a)Drug/Alcohol testing; (b) Dunlop's qualification file; (c)Audits of Dunlop's logs and hours of service preceding the accident;[14] (d) Reports from the QUALCOMM system which would show the speeds at which Dunlop operated the vehicle as well as other important data; (e) GPS data which would show the location of the vehicle as it was operated by Dunlop in the hours preceding the accident; and (f) driver inspections reports of the tractor-trailer. CTI had a duty to maintain these records because CTI knew, or should have known, that there was a substantial chance that a claim would arise when they were notified their employee had been involved in a collision requiring Plaintiffs to seek medical attention. Litigation should have been more than merely an abstract possibility or unwarranted fear immediately following the collision.

---

[14] CTI drivers must comply with the hours-of-service set forth in the Federal Motor Carrier Safety Regulations ("FMCSR"). A motor carrier such as CTI must require every driver to record his/her duty status for each 24-hour period. 49 C.F.R. § 395.8.

## C. CTI had Notice of Pending Litigation and Plaintiff's Injuries

15.     On January 23, 2018, in a letter addressed to CTI and Dunlop, Plaintiffs gave notice to all the relevant parties to anticipate litigation in this case.[15]

> This letter is a formal request that you retain and not dispose of or destroy any of the requested relevant and material evidence identified in this correspondence. Please be advised that if any of this evidence is not maintained by you, your client and your office, we will be compelled to seek spoliation sanctions for discovery abuse.

16.     The 5-page letter details the evidence that should be preserved, including the driver qualification file, drug/alcohol testing, driver's logs, GPS records and vehicle inspection reports and repair documents for the tractor trailer.[16] Defendant's insurance carrier, Hallmark, was also sent the same letter.[17] Hallmark, on behalf of CTI, acknowledged receipt of the spoliation letter on January 31, 2018.[18] Further, CTI and Hallmark hired counsel approximately four months after the collision, Mr. Noe Reyna,[19] who also acknowledged receipt of the spoliation letter and documents requested to be retained for litigation.[20]

17.     In his deposition, Lance Clayton provided testimony about his awareness of document retention and Federal regulations:

---

[15] Exhibit D.
[16] *Id.*
[17] Exhibit F.
[18] Exhibit G.
[19] Mr. Reyna unfortunately passed away during the pendency of this lawsuit, and he was substituted by Mr. Brennon Gamblin.  It should be noted that Plaintiffs contend that the spoliation of evidence described herein is alleged to have been committed by the corporate Defendant, CTI, and its agents.  Plaintiffs in no way allege any professional misconduct by defense counsel.
[20] Exhibit H.

```
        2      Q.   Some of the documents are required to be
        3   kept on file for a certain period of time in
        4   accordance with Federal regulations.  What was the
        5   company's, Clayton Transport's, document retention
        6   policy?
        7      A.   So for log books we normally kept the
        8   records for six months.  Driver qualification files
        9   we'll keep them for three years.  And any financial
       10   documents are kept for seven years.
```

Exhibit I, p.37:2-10.

18.     Further, CTI was audited in 2015 by the Missouri Department of Transportation/Motor Carrier Services to ensure compliance with the Federal Motor Carrier Safety Regulations (FMCSR).  The auditor recorded that CTI was in compliance as follows[21]:

| **Question**  Factor 2. Driver Question #12 Section #382.115(a), 382.115(b) Acute | **Answer** |
| Has the carrier implemented an alcohol and/or controlled substances testing program? | Yes |

| **Question**  Factor 3. Operation Question #4 Section #395.8(k)(1) Critical | **Answer** |
| Can the carrier produce records of duty status and supporting documents for selected drivers? | Yes |

| **Question**  Factor 4. Maintenance Question #1 Section #396.3(b) Critical | **Answer** |
| Can the carrier produce complete maintenance files for requested vehicle(s)? | Yes |

| **Question**  Factor 4. Maintenance Question #5 Section #396.11(a) Critical | **Answer** |
| Does the motor carrier require drivers to complete vehicle inspection reports daily? | Yes |

19.     Mr. Clayton further testified that at the onset of litigation, he produced documentation that he could produce "at the time," but when asked to supplement relevant documentation, he had already sold the company and he no longer had the documents.[22]  Mr. Clayton admitted that although he knew about the pending litigation, he did not advise the new owners to retain relevant documents related to Mr. Dunlop or the tractor trailer.[23]

---

[21] Exhibit M, Missouri Dept of Transportation Safety Audit.
[22] Exhibit I, p. p.38:13-19; Mr. Clayton testified that he sold the company on March 6, 2019. *Id.* at p.9:22-24.
[23] Id. at p. 39;6-13.

20.     It is important for this Court to note that CTI did not destroy all of the records pertaining to this case, only the records that could potentially show whether CTI was in compliance with the Federal Motor Carrier Safety Regulations, if the tractor trailer had mechanical issues and if the driver was in compliance with his hours of service, his speed, and the truck's location.  For example, the company kept the photographs taken by their driver at the scene of the collision, a copy of Mr. Dunlop's driver's license, and a 2-page employment application.  In other words, CTI only preserved select documents that would appear to benefit CTI in this litigation, apparently for its own convenience.

**D.     Defendant's egregious conduct**

21.     CTI has been less than truthful with Plaintiffs since the onset of this case.  On February 20, 2019, in response to Interrogatory No. 23(s)(8), CTI stated that the tractor trailer was not equipped with a satellite tracking device at the time of this collision.[24]  CTI amended its responses on October 11, 2019 and again stated that the tractor trailer was not equipped with a satellite tracking device.[25]  On January 2, 2020, CTI amended their responses to interrogatories a second time and again stated that the tractor trailer was not equipped with a satellite tracking device.[26]  The interrogatories were purportedly answered by the owner of CTI, Mr. Lance Clayton.

22.     After withholding key information for over a year, on January 14, 2020, Mr. Clayton testified at deposition that the tractor trailer was equipped with GPS.

> 9      Q.  The truck that Mr. Dunlop was driving at
> 10   the time of the collision, was that equipped with a
> 11   GPS tracking device?
> 12      A.  Yes.

---

[24] Exhibit J, Defendant's Objections and Responses to Plaintiffs' Request for Interrogatories.
[25] Exhibit K, Defendant's First Amended Objections and Responses to Plaintiffs' Request for Interrogatories.
[26] Exhibit L, Defendant's Second Amended Objections and Responses to Plaintiffs' Request for Interrogatories.

Exhibit I, p. 28:9-12.

23. Mr. Clayton testified that the GPS system on the truck was monitored through *Omnitracs,* an online service, and that although he had complete access to download the data, he never downloaded it, and he no longer had access to the system. This was the first time that Defendant ever mentioned *Omnitracs* as it is not mentioned anywhere is Defendant's responses to discovery, even though discovery had been amended twice before.

> 9     Q. And did you have access in order to be
> 10    able to review the log books, the electronic logs,
> 11    from Omnitracs?
> 12      A. I did.
> 13      Q. And how would you go about doing that?
> 14      A. At that time we could log in and download
> 15    them.
> 16      Q. And do you, do you still have login
> 17    credentials for Omnitracs?
> 18      A. I do not.

Exhibit I, p. 17:9-18.

24. Similarly, as to Plaintiffs' request for Dunlop's hours of service records, Defendant produced a two page "driver transaction information" report which only provided fuel transactions made by Dunlop.[27]

> 24. Please provide any and all documents related to Troy Alan Dunlop's employment as a driver, including but not limited to log books, trip sheets/reports, fuel tax records, gross receipt tax records, federal use tax records, state permits, fuel receipts, work orders, bills of lading, com. card receipts, expense sheets/records and any other documents that would show Troy Alan Dunlop's trip movements for January 18, 2018 and ten (10) days prior.
>
> **OBJECTIONS:** Defendant objects to this request because it is irrelevant, overly broad, burdensome, vague, and ambiguous. Defendant objects to this request to the extent it invades the privacy rights of individuals. Subject to and without waiving the foregoing objections, Defendant responds as follows:
>
> **RESPONSE:** Defendant acknowledges that Plaintiff has agreed to limit the request as to the requested documents listed. See copy of driver transaction information attached as bates nos. Clayton 000013-000014.

---

[27] Exhibit C, RFP No. 24.

25.     Even though this was Defendant's third amended response to Plaintiffs' Request for Production, Defendant's response was the same as CTI's first response dated February 20, 2019. Notably, on that date CTI had not yet been sold and Mr. Clayton still had access to the driver's logs. Again, Mr. Clayton testified that the logs were electronic, they were maintained by *Omnitrac*, he had access to download the logs and preserve them, but he failed to do so. He also testified that the company did have in its possession the information requested in Plaintiffs' Request for Production No. 24, although they have never been produced and he no longer has access to them.

> 21     Q. Now, as far as other additional documents
> 22  like trip sheets or trip reports, fuel records,
> 23  bills of lading, would those types of documents
> 24  have been administered electronically as well or
> 25  would those have been in paper form?

Exhibit I, p.31:21-25.

> 1     A. The majority of those documents would have
> 2  been both electronic and paper form.

Exhibit I, p. 32:1-2.

26.     Further, Motor Carriers such as CTI are required to maintain the original driver inspection reports, the certificate of repairs, and the certification of the driver's review for three-month from the date of the initial report, or when litigation is anticipated. Because CTI failed to preserve any documentation pertaining to the inspection of the condition of the tractor trailer prior to and subsequent to the accident, Plaintiffs are unable to ascertain whether the motor vehicle was in proper working condition. CTI was also required to drug test Mr. Dunlop immediately following the collision and Mr. Clayton was well aware of this fact. The FMCSRs state as follows:

**§382.303   Post-accident testing.**

(a) As soon as practicable following an occurrence involving a commercial motor vehicle operating on a public road in commerce, each employer shall test for alcohol for each of its surviving drivers:

(2) Who receives a citation within 8 hours of the occurrence under State or local law for a moving traffic violation arising from the accident, if the accident involved:

(i) Bodily injury to any person who, as a result of the injury, immediately receives medical treatment away from the scene of the accident;

(b) As soon as practicable following an occurrence involving a commercial motor vehicle operating on a public road in commerce, each employer shall test for controlled substances for each of its surviving drivers:

(2) Who receives a citation within thirty-two hours of the occurrence under State or local law for a moving traffic violation arising from the accident, if the accident involved:

(i) Bodily injury to any person who, as a result of the injury, immediately receives medical treatment away from the scene of the accident;

27. Rather than complying with this regulation by administering a drug test to Mr. Dunlop, Mr. Clayton testified that the fired Mr. Dunlop immediately after the collision.

```
19    Q.  Okay.  So your recollection is he was let
20  go after the accident?
21    A.  Yes.
22    Q.  And then when you say he was let go, of
23  course you being the president and 100 percent
24  shareholder of the company, did you make the
25  decision to let him go following the collision?
```

Exhibit I, p. 14:19-25.

```
1    A.  Yes.
2    Q.  Okay.  And what was your reason for
3  letting him go?
4    A.  This accident was unavoidable -- or it was
5  avoidable.
6    Q.  Okay.  And approximately how long
7  following this collision did you let him go?
8    A.  He -- after, after the collision he
9  finished his load out and came back to the yard and
10  then we let him go from there.
```

Exhibit I, p.15:1-10.

28.     This fact, combined with the destruction of other evidence such as the drivers logs, has the appearance of impropriety and suggests that CTI's intention was to attempt to conceal adverse evidence against it.

**E.      CTI's Prior History of FMCSR Violations**

29.     CTI has had a well-documented history of prior similar violations during roadside inspections as identified by the Federal Motor Carrier Safety Administration (FMCSA).  On July 8, 2016, the FMCSA sent the following warning to CTI:

> The Federal Motor Carrier Administration (FMCSA) has noticed a trend in the violations identified during roadside inspections of CLAYTON TRANSPORT INC's vehicles and/or drivers. Specifically, our records show significant non-compliance in the area(s) of **Vehicle Maintenance**. This warning letter formally notifies you of these safety performance and compliance problem(s). We are bringing these safety deficiencies to your attention so that you can take corrective action. You do not need to respond to this letter.

Exhibit L, Letter from the FMSCA to CTI dated 7/8/16.

30.     On September 28, 2017, only a few months before this collision, the US Department of Transportation conducted a safety review of CTI and found the following violations:

**i.      Hours of Duty Violations**

| 2 FEDERAL | Primary: 395.3(b)(2) | Discovered 1 | Checked 115 | Drivers/Vehicles In Violation 1 | Checked 5 |
|---|---|---|---|---|---|
| **Description** | Requiring or permitting a property-carrying commercial motor vehicle driver to drive after having been on duty 70 hours in 8 consecutive days. | | | | |
| **Example** | (b) (6), (b) (7)(C) drove on 08/26/17.  Drove 1.25 hours over 70 hours, 8 day period, 08/19-26/17. | | | | |

| 4 FEDERAL | Primary: 395.8(e)(1) | Discovered 10 | Checked 150 | Drivers/Vehicles In Violation 3 | Checked 5 |
|---|---|---|---|---|---|
| **Description** | Making, or permitting a driver to make, a false report regarding duty status | | | | |
| **Example** | (b) (6), (b) (7)(C)  08/14/17.  Log shows off duty, Neosho, MO. Fueled in Brigham, UT. 1265 miles away. | | | | |

| 5 FEDERAL | Primary: 395.8(e)(1) | Discovered 27 | Checked 150 | Drivers/Vehicles In Violation 4 | Checked 5 |
|---|---|---|---|---|---|
| **Description** Making, or permitting a driver to make, a false report regarding duty status (nominal) | | | | | |
| **Example** (b) (6), (b) (7)(C)  07/27/17. Fuel logged as off duty. | | | | | |

See Exhibit N, USDOT Safety Review.

### ii. Vehicle Maintenance Violations

| 7 FEDERAL | Primary: 396.3(a) | Discovered 1 | Checked 1 | Drivers/Vehicles In Violation 1 | Checked 1 |
|---|---|---|---|---|---|
| **Description** Failing to systematically inspect, repair, and maintain, or cause to be systematically inspected, repaired, and maintained, all motor vehicles and intermodal equipment subject to your control | | | | | |
| **Example** On 08/11/17, (b) (6), (b) (7)(C) drove unit #21, MO license #11AS7M. The driver was stopped in Utah and a Level 1 inspection was conducted. UT report #17JJ000469. Several safety defects were discovered including lights, brakes, and wheels. | | | | | |
| 8 FEDERAL | Primary: 396.3(b)(3) | Discovered 5 | Checked 5 | Drivers/Vehicles In Violation 5 | Checked 5 |
| **Description** Failing to keep a record of inspection, repairs and maintenance indicating their date and nature. | | | | | |
| **Example** On 09/03/17, (b) (6), (b) (7)(C) drove unit #21, MO license #11AS&M. | | | | | |

*Id.*

31.    The investigator noted that the safety review had been conducted because CTI was showing alerts in Hours of Service and Vehicle Maintenance BASICs.[28]

32.    Thus, one may reasonably infer that CTI spoliated Dunlop's logbooks in order to conceal the fact that Mr. Dunlop was likely beyond his permissible hours in violation of federal regulations at the time of the collision.

33.    It can also be inferred that CTI spoliated the vehicle maintenance records because it had failed to keep up with the regular maintenance of the tractor trailer, thereby giving rise to mechanical issues that contributed to this collision.

### F.    Sanctions for Spoliation of Evidence

---

[28] Exhibit N.

34.     CTI has knowingly breached its duty to preserve highly relevant evidence by spoliating relevant documents after the collision.  Plaintiffs are entitled to have the opportunity to inspect and examine the evidence that was destroyed by Defendant.  The failure to require Mr. Dunlop to submit to post-accident testing, failure to retain Dunlop's qualification file, failure to retain Dunlop's driver logs, and failure to retain QUALCOMM system records, GPS records and driver inspection reports as required by Federal law constitutes a destruction of relevant evidence impairing Plaintiffs' ability to conduct a full and meaningful investigation of their claims. Plaintiffs are permanently unable to present their case given these glaring holes in the evidence.

35.     Federal law controls evidentiary issues in this case, and therefore governs the determination of whether sanctions should be imposed for spoliation of evidence.  *King v. Illinois Central R. R.*, 337 F.3d 550 (5th Cir. 1986).  Discovery abuse sanctions are used to preserve the integrity of the justice system, and to prevent a party from profiting by its own discovery abuses.  *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).  ("Federal courts have inherent power to manage their own proceedings and to control the conduct of those who appear before them."); *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001) ("The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation ...") (citing *Chambers*, 501 U.S. at 49).

36.     The trial court has broad discretion to impose sanctions on a party responsible for spoliation of evidence.  *Vick v. Texas Employment Commission*, 514 F.2d 734 (5th Cir. 1975).  Therefore, if a party with a duty to preserve evidence fails to do so or intentionally destroys such information or things, a court may impose appropriate sanctions.  Fed. R. Civ. P. 37 (c)(1).  CTI's failure to preserve these relevant and important pieces of evidence has denied Plaintiffs the right and ability

to obtain and produce relevant, material, and important evidence, and thus damaged their ability to prosecute this claim.

**G.     Adverse-Inference Instruction**

37.     It is a commonsense and well-established principle that a party who has notice that evidence is relevant to litigation, and who nonetheless proceeds to destroy it, is more likely to have been threatened by that evidence than a party in the same position who does not destroy the evidence.  Plaintiffs respectfully submit that they are entitled to have the jury instructed as to the adverse inference to be drawn from CTI's destruction of this evidence.

38.     A spoliation instruction entitles the jury to draw an inference that a party who intentionally destroys evidence did so because the evidence was unfavorable to that party.  *See Russell v. Univ. of Texas of the Permian Basin*, No. 06-50102, 234 Fed. Appx. 195, 2007 WL 1879157, *10 (5th Cir. June 28, 2007) (unpublished) ("A spoliation instruction entitles the jury to draw an inference that a party who intentionally destroys documents did so because the contents of those documents were unfavorable to that party.").  At page 620 n.20, the *Rimkus* court set out the jury instructions, which the U.S. District Court for the Southern District of New York gave the jury in *Pension Committee*.  *See Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 620 n.20 (S.D. Tex. 2010) (*citing Pension Committee of Univ. of Montreal Pension Plan v. Banc of America Securities, LLC,* 685 F. Supp. 456, 496-97 (S.D.N.Y. 2010)).  These are the instructions—

The court provided the text of the charge:

The Citco Defendants have argued that 2M, Hunnicutt, Coronation, the Chagnon Plaintiffs, Bombardier Trusts, and the Bombardier Foundation destroyed relevant evidence, or failed to prevent the destruction of relevant evidence. This is known as the "spoliation of evidence."

Spoliation is the destruction of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. To demonstrate that spoliation occurred, the Citco Defendants bear the burden of

proving the following two elements by a preponderance of the evidence: First, that relevant evidence was destroyed after the duty to preserve arose. Evidence is relevant if it would have clarified a fact at issue in the trial and otherwise would naturally have been introduced into evidence; and

Second, that if relevant evidence was destroyed after the duty to preserve arose, the evidence lost would have been favorable to the Citco Defendants. I instruct you, as a matter of law, that each of these plaintiffs failed to preserve evidence after its duty to preserve arose. This failure resulted from their gross negligence in performing their discovery obligations. As a result, you may presume, if you so choose, that such lost evidence was relevant, and that it would have been favorable to the Citco Defendants. In deciding whether to adopt this presumption, you may take into account the egregiousness of the plaintiffs' conduct in failing to preserve the evidence.

However, each of these plaintiffs has offered evidence that (1) no evidence was lost; (2) if evidence was lost, it was not relevant; and (3) if evidence was lost and it was relevant, it would not have been favorable to the Citco Defendants. If you decline to presume that the lost evidence was relevant or would have been favorable to the Citco Defendants, then your consideration of the lost evidence is at an end, and you will not draw any inference arising from the lost evidence.

However, if you decide to presume that the lost evidence was relevant and would have been favorable to the Citco Defendants, you must next decide whether any of the following plaintiffs have rebutted that presumption: 2M, Hunnicutt, Coronation, the Chagnon Plaintiffs, Bombardier Trusts, or the Bombardier Foundation. If you determine that a plaintiff has rebutted the presumption that the lost evidence was either relevant or favorable to the Citco Defendants, you will not draw any inference arising from the lost evidence against that plaintiff. If, on the other hand, you determine that a plaintiff has not rebutted the presumption that the lost evidence was both relevant and favorable to the Citco Defendants, you may draw an inference against that plaintiff and in favor of the Citco Defendants-namely that the lost evidence would have been favorable to the Citco Defendants.

Each plaintiff is entitled to your separate consideration. The question as to whether the Citco Defendants have proven spoliation is personal to each plaintiff and must be decided by you as to each plaintiff individually.[29]

39.     As an alternative to a harsher sanction, the Court here could give a similar instruction if it

finds that CTI committed spoliation.

### i.     Alternatively, the Predicate Question of Whether a Party Committed Spoliation May Go To The Jury.

---

[29] *See Rimkus Consulting*, 688 F. Supp. 2d at 620 n.20 (S.D. Tex. 2010) (*citing Pension Committee of Univ. of Montreal Pension Plan v. Banc of America Securities, LLC*, 685 F. Supp. 456, 496-97 (S.D.N.Y. 2010)).

40.     Even if the Court does not itself determine that CTI committed spoliation, the Court may decide that there is sufficient evidence of spoliation to put the questions of whether CTI committed spoliation (in addition to an adverse-inference instruction) to the jury.   *See Rimkus Consulting*, 688 F. Supp. 2d at 620 ("As explained in more detail below, based on the record in this case, this courts makes the preliminary findings necessary to submit the spoliation evidence and an adverse inference instruction to the jury.   But the record also presents conflicting evidence about the reasons the defendants deleted the emails and attachments.... As a result, the jury will not be instructed that the defendants engaged in intentional misconduct.   Instead, the instruction will ask the jury to decide whether the defendants intentionally deleted emails and attachments to prevent their use in litigation.   If the jury finds such misconduct, the jury must then decide, considering all the evidence, whether to infer that the lost information would have been unfavorable to the defendants."); *Id.* at 646-47 & n.34 (stating that the jury would hear the evidence about the deletion of emails and attachments and decide whether the defendants committed spoliation).

41.     In *Rimkus*, the Court stated that it would instruct the jury that the defendants had a duty to preserve emails and other information that they knew to be relevant in anticipated litigation, ask the jury whether the defendants deleted emails to prevent their use in litigation, and instruct the jury that it may, but wasn't required, to infer that the emails' content would have been unfavorable to the defendants.   *See Rimkus Consulting*, 688 F. Supp. 2d at 646-47.   The Court should give a similar instruction in the instant case.

## H.     Monetary Sanctions Should Also Be Awarded In This Case.

42.     In *Consolidated Aluminum Corp. v. Alcoa, Inc*., the Court awarded the non-spoliating party the reasonable costs and attorney's fees it incurred in bringing its motion for sanctions and in investigating and attempting to obtain the discovery at issue.   *Consolidated Aluminum Corp. v.*

*Alcoa, Inc.*, 244 F.R.D 335 (M.D. La. 2006). In that case, the Court found negligent spoliation, under the circumstances and facts of that case, but declined to invoke an adverse inference instruction. Nevertheless, the Court, at 348, cited with approval decisions to the effect that: "it was essential that defendant's conduct be deterred and that the amount of the monetary sanction fully reflects the reckless disregard and gross indifference displayed by the defendants toward their discovery and document retention obligations."

III. CONCLUSION

43.    CTI has clearly spoliated crucial evidence, which it knew was both relevant and material. CTI destroyed this evidence without justification, and as a result of CTI's spoliation of evidence, Plaintiffs' case has been prejudiced and CTI's defense has been unfairly and unjustly advantaged. As such, Plaintiffs respectfully pray that this Court correct this obvious inequity and level the playing field by imposing sanctions, invoking an adverse inference, and delivering an adverse inference instruction to the jury.

44.    On the grounds stated in his motion, and for the reasons stated herein, Plaintiffs' Motions for Sanctions should also be granted.

PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray the Court enter spoliation instructions and/or adverse inference instructions to the jury concerning each and every item that the Defendant has failed to produce. Specifically, Plaintiffs pray the jury should be instructed that (1) CTI refused to test their driver, failed to preserve the driver's qualification file, failed to maintain the driver's logs, QUALCOMM system records and GPS records and failed to maintain the vehicle/driver inspection reports; (2) however CTI failed to preserve their relevant files constituting a spoliation of evidence; and (3) it should be presumed to show evidence unfavorable

to the Defendant's case or helpful to the Plaintiffs' case. Plaintiffs additionally pray for such other

and further relief to which the Plaintiffs may be justly entitled to at law or in equity.

Respectfully submitted,

By: */s/ Daniel A. Torres*
Daniel A. Torres
State Bar No. 24046985
Federal Bar No. 573645

Javier Villarreal
State Bar No. 24028097
Federal Bar No. 30384

Of Counsel:

VILLARREAL & BEGUM
2401 Wild Flower Drive, Suite A.
Brownsville, Texas 78526
Tel: 956-544-4444
Fax: 956-550-0877

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 11, 2020, a true and correct copy of the above and foregoing instrument was sent to all counsel of record as indicated below:

Brennon D. Gamblin                                    *Via Electronic Filing*
HARTLINE DACUS BARGER DREYER, LLP
One Shoreline Plaza
800 North Shoreline Blvd.
Suite 2000, North Tower
Corpus Christi, Texas 78401

*/s/ Daniel A. Torres*
Daniel A. Torres